## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**Robert Fox, Jr.**
**506 South Roosevelt Ave.**
**Fullerton, California  92832**

**James McLaughlin**
**292 Spruce Dr.**
**Anaheim, CA  92805**

**Finn Pette**
**831 N. Buena Vista St.**
**Burbank, CA  91505**

**Daniel Himmelberg**
**3522 E. Baron Court**
**Orange, California  92869**

**Ronald Pitts**
**3010 Wilshire Blvd.**
**Los Angeles, California  90010**

**Glenn Szalay**
**5949 Eastbrook Ave.**
**Lakewood, CA  90713**

**John Crooks**
**P. O. Box 2481**
**Anderson Lake Rd., Space 131**
**Chimacum, WA  98325**

**Nye Nelson**
**303 Viewridge Dr.**
**Sequim, Washington  98382**

**Edward P. Pette**
**1835 Mountain Shadow Lane**
**Cheyenne, Wyoming  82009**

**Anne Brophy**
**4176 Verdugo View Dr.**
**Los Angeles, California  90065**

**Jay Brophy**
**4176 Verdugo View Dr.**
 **Los Angeles, California  90065**

**individually and on behalf of**
**all others similarly situated,**

   **Plaintiffs,**

**v.**             **CIVIL ACTION NO. _____**

**Robert McCormick**
**Noel C. Borck**
**Paul O. Gehl**
**J. Patrick Tielborg**
**Paul C. Bensi**
**James T. Callahan**
**Michael R. Murphy, Jr.**
**Terrance E. McGowan**
**Brian E. Hickey**
**John Duffy**
**Vincent J. Giblin**
**ABM Industries Incorporated**
**Able Engineering Services**
**DOES 1-10,**

   **Defendants.**

## COMPLAINT

1.     Dozens of International Union of Operating Engineers ("IUOE") locals have opted to use the Central Pension Fund of the International Union of Operating Engineers ("CPF") as the pension plan for their local members. The terms of collective bargaining agreements ("CBAs") between these locals and employers require that employers contribute to the CPF, and employees receive credit for, a per-hour fringe benefit for each hour worked. The trustees of the CPF breached their fiduciary obligation to the CPF by failing to collect these fringe benefit contributions from employers. This injured the plan participants by reducing their pension benefit because the retirement value of a CPF contribution is determined at the time of contribution by a multiplier that is adjusted at irregular intervals taking into account the financial resources of the CPF.

2.     Plaintiffs therefore bring this class action lawsuit (1) on behalf of the CPF against the trustees of the CPF under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), to recoup the plan assets squandered by the trustees' failure to pursue claims for fringe contributions with the requisite prudence and diligence; (2) on behalf of the CPF against Vincent Giblin and Paul C. Bensi under ERISA § 502(a)(2), for breach of their fiduciary obligations by engaging in prohibited transactions; and (3) on behalf of the CPF against Able Services and ABM Industries Incorporated under ERISA § 502(a)(3) for their unjust enrichment at the expense of the CPF.

### JURISDICTION AND VENUE

3.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

4.     Venue is proper pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## PARTIES

**Plaintiffs**

5.      Plaintiff Robert Fox, Jr. is a member of Local 501 and a participant in the CPF.

6.      Plaintiff James McLaughlin is a member of Local 501 and a participant in the CPF.

7.      Plaintiff Finn Pette is a member of Local 501 and a participant in the CPF.

8.      Plaintiff Daniel Himmelberg is a member of Local 501 and a participant in the CPF.

9.      Plaintiff Ronald Pitts is a member of Local 501 and a participant in the CPF.

10.      Plaintiff Glenn Szalay is a member of Local 501 and a participant in the CPF.

11.      Plaintiff John Crooks is a member of Local 501 and a participant in the CPF.

12.      Plaintiff Nye Nelson is a member of Local 501 and a participant in the CPF.

13.      Plaintiff Edward P. Pette is a member of Local 501 and a participant in the CPF.

14.      Plaintiff Anne Brophy is a member of Local 501 and a participant in the CPF.

15.      Plaintiff Jay Brophy is a member of Local 501 and a participant in the CPF.

**Defendants**

16.      Defendant Robert P. McCormick is a trustee of the CPF.

17.      Defendant Noel C. Borck is a trustee of the CPF.

18.      Defendant Paul O. Gehl is a trustee of the CPF.

19.      Defendant J. Patrick Tielborg is a trustee of the CPF.

20.      Defendant Paul C. Bensi is the president of Able Engineering Services and a trustee of the CPF.

21.      Defendant James T. Callahan is a trustee of the CPF.

4

22.     Defendant Michael R. Murphy, Jr. is a trustee of the CPF.

23.     Defendant Terrance E. McGowan is a trustee of the CPF.

24.     Defendant Brian E. Hickey is a trustee of the CPF.

25.     Defendant John Duffy is a trustee of the CPF.

26.     Defendant Vincent J. Giblin is the former general president of the IUOE and a former trustee of the CPF.

27.     Defendant ABM Industries, Inc., is a corporation headquartered in New York and incorporated in Delaware.

28.     Defendant Able Engineering Services is a corporation headquartered in California.

29.     Does 1-10 are additional past and present trustees of the CPF.

**EMPLOYERS ARE REQUIRED TO MAKE FRINGE BENEFIT CONTRIBUTIONS**

30.     Union locals negotiate parent-body CBAs with organizations representing employers of union labor. For example, Local 501, a local with jurisdiction over parts of California and Nevada, negotiated a CBA with the members (hereinafter "Employers") of the Building Owners and Managers Association ("BOMA") of Greater Los Angeles, effective November 1, 2006 through October 31, 2011 ("BOMA CBA"). Local 501 represents "stationary engineers," engineers who are responsible for the maintenance and repair of equipment at fixed locations such as hospitals, hotels, or arenas.

31.     The members of BOMA include large property owners and property management agencies with a nationwide property base. These members are employers of Local 501 labor.

32.     Under the BOMA CBA, § I.C, all employees of a signatory contractor ("Employees") must be members of Local 501 within 31 days of the effective date of the CBA,

5

and all new employees must join the local within 31 days of hiring. The standard terms of the agreement also apply to any buildings built and operated by an employer subsequent to the date of the BOMA CBA.

33.     For buildings built prior to, but signed to an operating contract with a covered employer after the effective date, the agreement may apply in two different ways. If the Union makes a request for recognition at a particular worksite following an employee vote, and prior to the BOMA signatory giving notice of negotiations for the operations contract at that site, the standard terms apply. § I.F.1. If the BOMA signatory begins the negotiations for the operations contract prior to the union request, alternative wage and benefits terms apply. § I.F.2.

34.     The standard BOMA CBA terms require an employer to pay a specified hourly wage and make a contribution to the CPF for each hour worked by a unionized employee. For most employees, this contribution was $5.00 at the time the agreement was signed and rose in several steps to reach $6.00 during the last year of the agreement.

35.     The alternative BOMA CBA terms give the employer a period of time of up to three years, depending on the wage at the building prior to the BOMA signatory commencing service, to raise wage and pension contributions to the full union rate.

36.     Employers are further bound by the Agreement and Declaration of Trust establishing the CPF and they agree to abide by such rules as are established by the Trustees of the CPF. § XIV.A, D.

**CPF PARTICIPANTS' BENEFITS ARE BASED ON THE NUMBER OF HOURS WORKED AND THE FINANCIAL HEALTH OF THE PLAN**

37.     The CPF credits each plan participant with the hours of employee service and corresponding contributions for those hours.

6

38.      A participant must achieve five years of vesting service to gain a vested interest and become eligible for a pension. 1,000 hours of service in a calendar year earns a full year of vesting service.

39.      Once a participant vests and reaches retirement age, the monthly benefit is determined by multiplying the participant's contributions by a Benefit Accrual Rate ("BAR").

40.      The BAR is a percentage of a participant's pension contribution to which that participant is entitled as a monthly benefit. It varies depending upon when a contribution was made. For example, a contribution made between August 1, 2005 and April 1, 2009 has a rate of 3% while a contribution made after April 1, 2009 has a rate of 1%. Thus, $1000 in contributions in 2006 would entitle a participant to $30 in monthly benefits at retirement, while the same contribution in 2010 would yield only $10 in monthly benefits.

41.      The BAR varies because is adjusted, from time to time, by the trustees of the CPF depending upon the health of the fund. If the CPF has a relatively large amount of assets relative to pension obligations, the trustees will set the rate at a relatively high level. Conversely, if the assets are modest relative to pension obligations, the rate will be set at a low level. Thus, any factor that reduces the financial resources of the CPF, such as a failure by the trustees of the CPF to diligently pursue delinquent contributions, will result in a reduced pension benefit for plan participants.

**EMPLOYERS HAVE NOT MADE THE REQUIRED FRINGE BENEFIT CONTRIBUTIONS**

42.      ABM is a multinational provider of facility management services. ABM's employees include operating engineers, and ABM is a signatory to various IUOE Local CBAs, including the BOMA.

43.     Able is a large, national provider of building services. Able's employees include operating engineers, and Able is a signatory to various IUOE Local CBAs, including the BOMA.

44.     Beginning prior to 1992, ABM and Able stopped paying all fringe benefits owed into the CPF on behalf of IUOE members. Each company retained 80% of its unpaid contribution for its own benefit. More recently, in approximately 2008, officers of Local 501 discovered a continuing pattern of failing to pay fringe benefits to employee benefit plans. An audit of the Local 501 health & welfare plan revealed delinquent contributions exceeding $500,000 for the preceding two years. Similar delinquent contributions were discovered with respect to the CPP when Plaintiff Finn Pette, on the advice of union administrative staff, audited his individual account statements and learned that he had not recevied contribution credits for hours worked at BOMA employers. Pette was informed by union administrative staff that this failure to credit was common.

45.     In addition, ABM and Able are also avoiding paying fringes through a scheme known as "double breasting." In its simplest form, this constitutes a CBA signatory providing both union and non-union labor. A more complex variant occurs when a CBA signatory forms another corporate entity which does not sign the CBAs and operates with non-union labor. This alternate corporate entity is, however, distinct only in respect to the separate incorporation, as daily corporate operations are shared with the CBA signatory counterpart including administration, payroll, financing, and staffing. The mere fact of separate incorporation does permit the employer to evade its CBA obligations.

46.     One example of such double breasting occurs at the Palmdale, California regional airport. The airport falls within the geographic jurisdiction of Local 501. ABM, a BOMA signatory, nonetheless supplies non-union stationary engineers to the airport.

47.      Another instance of double breasting occurred at the BMW Training Center in Ontario, California. This location falls within the geographic jurisdiction of Local 501. ABM, a BOMA signatory, nonetheless supplies non-union stationary engineers at the worksite.

48.      ABM routinely prepares a "Job Opportunities Postings" list, in spreadsheet form.

49.      This list includes both union and non-union engineering postings within the Local 501 geographic jurisdiction. The job responsibilities for both the union and non-union postings fall with the job categories covered by the BOMA. ABM nonetheless expressly seeks to hire engineers for "Non Union" positions.

50.      One example of double breasting by Able occurred at 600 East Olive in Burbank, California. This location falls within the geographic jurisdiction of Local 501. Able, a BOMA signatory, nonetheless supplies non-union stationary engineers at the worksite.

51.      Able has also been contracted to provide engineering services at all properties in California managed by Jamison Services, Inc. Jamison has more than 100 properties located within the geographic jurisdiction of Local 501. Local 501 is, however, providing union labor at less than 25% of those properties.

**THE TRUSTEES OF THE CPF KNEW ABOUT THE UNCOLLECTED PENSION CONTRIBUTIONS, BUT FAILED TO TAKE REASONABLE ACTION**

52.      From 2005-2008, Finn Pette, a business agent for Local 501, repeatedly requested from Able a list of union worksites.

53.      Able refused these requests.

54.      In 2007, Giblin, then President of the IUOE and Chairman of the CPF board of trustees, spoke to Pette about Pette's efforts to obtain information from Able.

55.      Pette indicated to Giblin that he was seeking the list of Able worksites to confirm that they were unionized and paying proper wages and benefits.

56.     Giblin directed Pette to cease investigating the status of the Able worksites.

57.     Giblin's son, Dennis Giblin, works as "director of business development" for Able. Dennis Giblin remains employed by Able even though he was convicted in 2010 in federal court of receiving kickbacks and embezzling while an officer at IUOE Local 68.

58.     On information and belief, defendant Giblin is both a colleague and a friend of Dennis Lundy, a former training director with the Local 501 Apprenticeship and Training Trust and later a regional director with the IUOE. Dennis Lundy's daughter is an employee of Able.

59.     The president of Able, defendant Bensi, also serves as a trustee for the CPF. On information and belief, as president of Able he is aware of the fringe benefit payment and union employment policies of Able.

60.     Although the CPF trustees knew that pension contributions were not being made, reasonable efforts were not taken to collect these contributions.

## CLASS ALLEGATIONS

61.     Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated individuals, pursuant to Fed. R. Civ. P 23(b)(1), (2) and (3).

62.     The class is defined as: all participants in the CPF.

63.     The requirements of Rule 23(a) are satisfied for the Class because (1) there are dozens of locals each with thousands of members who participate in the CPF; (2) there are common questions regarding the trustees' failure to exercise their fiduciary duties with the requisite prudence and diligence; (3) the claims of the named plaintiffs are representative of the class; and (4) plaintiffs with counsel will fairly and adequately protect the interests of the class.

64.     The requirements of Rule 23(b)(1)(B) are met because separate actions run the risk of inconsistent adjudications that would establish incompatible standards of conduct for the trustees.

65.     The requirements of Rule 23(b)(2) are met because the trustees' failure to pursue delinquent contributions has a common impact on the Plan and class members, through the BAR, and injunctive relief ordering that trustees pursue the delinquencies is appropriate to cure the harm to the Plans.

66.     The requirements of Rule 23(b)(3) are met because the common question of whether the trustees breached their fiduciary obligations predominates over any individual questions and a class action is superior to repeated individual actions litigating the same issues for the purpose of fairly and efficiently adjudicating this controversy.

## COUNT 1

### ERISA § 502(a)(2) - Breach of Fiduciary Duty by All Trustees

67.     All named Plaintiffs, on behalf of the Class, incorporate the preceding paragraphs by reference.

68.     Section 502(a)(2) allows a participant in a plan to bring a civil action for relief from a violation of ERISA § 409, 29 U.S.C. § 1109.

69.     ERISA § 409(a), 29 U.S.C. §1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by that title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through

use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

70.     ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

71.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

72.     ERISA § 404(a), 29 U.S.C. § 1104(a). "Fiduciary Duties," provides, in pertinent part, that "a fiduciary shall discharge his duties . . . with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

73.     At all times relevant to this Complaint, the CPF trustees were fiduciaries of the plan because they have discretionary authority and control over the management of the CPF.

74.     The Trustees, in their role as fiduciaries for the CPF, failed to exercise with reasonable diligence their authority and control over the management of plan, specifically the

collection of owed but unpaid CPF contributions, thereby depriving the CPF of assets owed to the plan.

## COUNT II

**ERISA § 502(a)(2) – Breach of Fiduciary Duty by Vincent Giblin and Paul C. Bensi**

75.     ERISA § 406(b), 29 U.S.C.§ 1106, prohibits a fiduciary with respect to a plan from dealing with assets of the plan for his own account or on behalf of a party whose interests are adverse to the interests of the plan.

1.     Defendant Paul C. Bensi is the president of Able contracting. By failing to exercise his authority as a trustee to promote the collection of contributions owed to the CPF by Able, he dealt with assets of the plan both in his own financial interests as an employee of Able and in the interests of Able, and adversely to the interests of the CPF.

76.     The son of Vincent Giblin and the daughter of Dennis Lundy, a colleague and friend of Vincent Giblin, are employed by Able. By failing to exercise his authority as a trustee to promote the collection of contributions owed to the CPF by Able, Vincent Giblin acted in a transaction involving the CPF on behalf parties whose interests are adverse to the interests of the CPF.

## COUNT III

**ERISA § 502(a)(3) – Unjust Enrichment of Able and ABM at the Expense of the CPF**

77.     Both Able and ABM have failed to make required contributions to the CPF.

78.     By failing to make such contributions, they have been unjustly enriched at the expense of the CPF.

**WHEREFORE**, Plaintiffs on their own behalf and on behalf of all others similarly situated respectfully request the following relief:

(a)      A declaration that the Trustees of the CPF have breached their ERISA fiduciary duties to the CPF and its plan participants by failing to pursue delinquent contributions to the CPF;

(b)      A declaration that Vincent J. Giblin and Paul C. Bensi have breached their ERISA fiduciary duties to the CPF and its plan participants by engaging in prohibited transactions;

(c)      An order compelling the CPF Trustees to make good to the CPF all losses to the Plan resulting from their breaches of their fiduciary duties;

(d)      The Trustees be found liable for the failure to exercise their fiduciary duties in an amount equal to the forgone contributions to the Plans, with prejudgment and postjudgment interest;

(e)      A declaration that Able and ABM have violated ERISA § 502(a)(3) by aiding and abetting the ongoing failure of the CPF trustees to collect delinquent contributions;

(f)      An injunction ordering Able and ABM to resume paying contributions owed to the CPF;

(g)      Reasonable attorney's fees and the costs of this litigation; and

(h)      Such other relief as this court deems equitable and just.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: November 16, 2012

Gregory Porter (D.C. Bar No. 458603)
BAILEY & GLASSER, LLP
910 17th Street, NW
Suite 800
Washington, DC 20006
Tel: 202-463-2101
Fax: 202-463-2103
gporter@baileyglasser.com

Attorney for Plaintiffs

15