UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROBERT FOX, JR., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 12-1869 (RMC) |
| ROBERT MCCORMICK, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**OPINION**

The question presented is whether employee-participants in a multiemployer, defined-benefit, pension plan have standing to sue plan trustees for breach of their fiduciary duty to collect contributions from long-delinquent employers. Plaintiff-employees here contend that collection of allegedly overdue contributions would have increased the assets of the plan, induced the trustees to raise benefit rates upon retirement, and ultimately enlarged participants' monthly pension benefits. The Court finds that Plaintiffs do not have standing to sue on the claim as presented in Count I, and will dismiss Count I without prejudice. Because Plaintiffs voluntarily and timely move to dismiss Counts II and III, those Counts also will be dismissed without prejudice.

**I. FACTS**

Eleven individuals bring this potential class action lawsuit under the Employee Retirement Income Security Act (ERISA) of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* Robert Fox, Jr., James McLaughlin, Finn Pette, Daniel Himmelberg, Ronald Pitts, Glenn Szalay, John Crooks, Nye Nelson, Edward Pete, Anne Brophy, and Jay Brophy (collectively, Plaintiffs) declare that they are members of Local 501, International Union of Operating Engineers, which

1

represents stationary engineers in parts of California and Nevada, that is, "engineers who are responsible for the maintenance and repair of equipment at fixed locations such as hospitals, hotels, or arenas." Compl. [Dkt. 1] ¶ 30. All Plaintiffs also are participants in the Central Pension Fund of the International Union of Operating Engineers and Participating Employers (Central Pension Fund). *Id.* ¶¶ 5-15, 30; *see infra* note 1. In Count I, Plaintiffs sue twenty-one current and former Trustees of the Central Pension Fund, on behalf of the Fund, "to recoup the plan assets squandered by the trustees' failure to pursue claims for fringe [benefit] contributions . . . ." Compl. ¶¶ 2, 16-29. Specifically, Plaintiffs contend that ABM Industries, Inc. (ABM) and Able Engineering Services (Able) failed, for decades, to contribute to the Central Pension Fund as required and Trustees breached their ERISA fiduciary duties by not ensuring that ABM and Able satisfied their obligations to make contributions. *Id.* ¶¶ 1-2.

### A. Overview of the Central Pension Fund

The Central Pension Fund is a multiemployer pension plan as that term is defined in Section 3(37) of ERISA, 29 U.S.C. § 1002(37). It is maintained under a Restatement Agreement and Declaration of Trust, administered by Trustees at its headquarters in Washington, D.C. Michael R. Fanning is the Chief Executive Officer of the Central Pension Fund.[1] The Central Pension Fund pays covered retirees a defined monthly benefit. Compl. ¶¶ 39-40.

The Central Pension Fund is a defined benefit plan, which means that it pays covered retirees a fixed, or "defined," monthly benefit. *Id.*; *see also* 29 U.S.C. § 1002(35); *Fanning v. High Mountain Inspection Servs., Inc.*, 520 F. Supp. 2d 55, 57-58 (D.D.C. 2007) (finding the Central Pension Plan to be a defined benefit plan). *Hughes Aircraft Co. v. Jacobson*,

---

[1] Plaintiffs' Complaint neither identifies the location of the Central Pension Fund's administration or breach, nor the residences of Trustees. The Court takes judicial notice of the complaint in *Fanning v. Environmental Services. J.B., LLC*, Civil Case No. 13-cv-1833(RMC) (D.D.C. filed Nov. 21, 2013), which is brought by Trustees of the Central Pension Fund and identifies the location of the Fund's administration as Washington, D.C.

2

525 U.S. 432 (1999), provides the details that characterize a defined-benefit plan as relevant to this litigation:

> Such a plan, as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment. . . . [T]he employer typically bears the entire investment risk and—short of the consequences of plan termination—must cover any underfunding as the result of a shortfall that may occur from the plan's investments. . . . Given the employer's obligation to make up any shortfall, no plan member has a claim to any particular asset that composes a part of the plan's general asset pool. . . . Since a decline in the value of a plan's assets does not alter accrued benefits, members similarly have no entitlement to share in a plan's surplus . . . .

*Id.* at 440 (internal quotations and citations omitted).

The International Union negotiates collective bargaining agreements with one or more unspecified multiemployer bargaining associations to cover terms and conditions for operating engineers who are represented by the Union. Local Unions then negotiate coverage by the national contract with local multiemployer bargaining associations. *See* Compl. ¶ 30 ("Union locals negotiate parent-body CBAs with organizations representing employers of union labor."). Local 501 has negotiated a collective bargaining agreement with the members of the Building Owners and Managers Association of Greater Los Angeles (sometimes, BOMA), most recently effective from November 1, 2006 through October 31, 2011. *Id.* Employers represented by Building Owners and Managers Association "include large property owners and property management agencies with a nationwide property base." *Id.* ¶ 31. Members of the Association employ Local 501 labor. *Id.* The standard terms of the Building Owners and Managers Association collective bargaining agreements apply to any buildings built and operated by a signatory employer subsequent to the date of the contract. Standard terms also require an employer to pay a specified hourly wage and to contribute to the Central Pension Fund, among other negotiated benefits, for each hour worked by a represented employee. Employers are

3

bound further by the Agreement and Declaration of Trust, as amended, that governs the Central Pension Fund and they agree to comply with such rules as are established by Trustees. *Id.* ¶¶ 31, 34, 36.

The Complaint alleges that the monthly defined benefit paid to retired operating engineers is the product of a simple mathematical formula: the contributions that an employer makes on behalf of an employee participating in the Central Pension Fund are multiplied by the Fund's rate of return that existed at the time the contributions were made. *Id.* ¶ 40. Thus, if a participant covered by the Central Pension Fund earned $1000 in contributions in 2006, a period during which the rate of return was three percent, he would allegedly receive thirty dollars in monthly benefits upon retiring. *Id.*

The rate of return multiplier, or Benefit Accrual Rate, is set by Trustees. Plaintiffs claim that Trustees "from time to time" adjust the Benefit Accrual Rate based on the "health of the fund." *Id.* ¶ 41. The Complaint alleges that, "[i]f the [Central Pension Fund] has a relatively large amount of assets relative to pension obligations, the trustees will set the rate at a relatively high level. Conversely, if the assets are modest relative to pension obligations, the rate will be set at a low level." *Id.*; *see also id.* ¶ 40 (alleging Trustees set a three percent Benefit Accrual Rate for contributions made between August 1, 2005 and April 1, 2009, but lowered the Benefit Accrual Rate to one percent for contributions made after April 1, 2009).

**B. The Instant Litigation**

Plaintiffs allege that ABM and Able are signatories to the collective bargaining agreement negotiated by Local 501 with Building Owners and Managers Association but have avoided making contributions to the Central Pension Fund for more than twenty years. "Beginning prior to 1992, ABM and Able stopped paying all fringe benefits owed into the

4

[Central Pension Fund] on behalf of [International Union] members." *Id.* ¶ 44. In or around 2008, officers of Local 501 uncovered "a continuing pattern of [ABM and Able] failing to pay fringe benefits to employee benefit plans." *Id.* Plaintiffs also accuse ABM and Able of evading their obligations to contribute to the Central Pension Fund by employing non-union stationary engineers at worksites subject to the contract between Local 501 and Building Owners and Managers Association. *Id.* ¶¶ 44-51. Plaintiffs contend that Trustees knew about the unpaid contributions but failed to undertake reasonable collection efforts due to self-interest and familial ties to Able. *Id.* ¶¶ 52-60.

According to Plaintiffs, the failures of ABM and Able to pay the pension contributions that they owed and the failure of Trustees to ensure the collection of such contributions have injured the Central Pension Fund and its participants. Plaintiffs accuse Trustees of breaching their fiduciary duties, and frame the resulting injuries in terms of an alleged reduction of fund assets and their own monthly pension benefits. Specifically, Plaintiffs contend that uncollected contributions "reduce[d] the financial resources of the [Central Pension Fund]," *id.* ¶ 41, "depriving the [Fund] of assets owed to the plan," *id.* ¶ 74. According to Plaintiffs, this has resulted in a depression of the Benefit Accrual Rate and, ultimately, Plaintiffs' monthly pension benefits. *Id.* ¶ 41. In other words, Plaintiffs argue that the Fund is diminished and their pension benefits would be greater but for Trustees' failure to collect contributions from ABM and Able. *Id.* ¶ 1.

The instant Complaint was filed on November 16, 2012. Count I alleges that twenty-one Trustees breached the fiduciary duty imposed by section 409(a) of ERISA, 29 U.S.C. § 1109(a). Count II accuses two particular Trustees of engaging in transactions prohibited by section 406(b) of ERISA, 29 U.S.C. § 1106. Count III alleges that ABM and Able violated

5

section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), through unjust enrichment and aiding and abetting Trustees in the non-collection of pension contributions. Compl. ¶¶ 67-78, 14.

ABM, Able, and Trustees separately move to dismiss. In a single response, Plaintiffs oppose dismissal of Count I but move voluntarily to dismiss Counts II and III without prejudice. Able agrees that Counts II and III can be dismissed without prejudice but Trustees and ABM seek dismissal of Counts II and III with prejudice, respectively. ABM also requests fees and costs, which Plaintiffs oppose.

## II. LEGAL STANDARDS

Federal courts were established by Article III of the U.S. Constitution as courts of limited jurisdiction. U.S. Const. art. III, § 2. As relevant here, federal courts have jurisdiction over cases involving a federal statute, 28 U.S.C. § 1331, and where, in the Constitution's words, there is a "Case[]" or "Controvers[y]," *id.*, art. III, § 2, cl. 1; *see also David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013) (noting that federal courts have "subject matter jurisdiction over ERISA claims only where the [litigants] have both statutory *and* constitutional standing."). No action of the litigators can confer subject matter jurisdiction on a federal court. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).

In this suit, participants in a multiemployer benefit plan subject to ERISA complain about plan fiduciaries "on behalf of the plan itself." Section 502(a) of ERISA, 29 U.S.C. § 1132(a), read together with section 409, 29 U.S.C. § 1109, expressly permits such participant suits, *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985)), and Trustees do not argue otherwise. It is uncontested that Plaintiffs are participants of the Central Pension Fund and that Defendant

6

Trustees hold, or held, positions with fiduciary duties to the Fund. Accordingly, ERISA gives Plaintiffs statutory standing to sue Trustees on behalf of the Central Pension Fund.

Statutory standing is not the end of the inquiry, however. Trustees challenge Plaintiffs' standing to sue under Article III of the Constitution. When a defendant challenges a plaintiff's standing to bring a lawsuit, the defendant's motion is properly understood as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[2] This is because a "defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2nd Cir. 2005). Under Rule 12(b)(1), the party claiming subject matter jurisdiction bears the burden of demonstrating that it has standing. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). The court reviews a complaint liberally, giving a plaintiff the benefit of all reasonable inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004). Defendant's motion turns on application of these legal precepts.

### III. ANALYSIS

Article III of the U.S. Constitution requires plaintiffs to "'allege[] such a personal stake in the outcome of the controversy' as to warrant [their] invocation of federal-court jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (quoting *Baker v. Carr*, 369 US. 186, 204 (1962)). "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the

---

[2] "[A] party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction . . . ." Fed. R. Civ. P. 12(b).

meaning of Article III. This is the threshold question in every federal case . . . ." *Id.* The traditional Article III standing inquiry is well-known:

> a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Accordingly, it is possible for a litigant to have statutory standing but not Article III standing. *See Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue a plaintiff who would not otherwise have standing."); *Alphin*, 704 F.3d at 338.

The parties spill a great deal of ink arguing whether Plaintiffs have standing to sue as representatives of the Central Pension Fund. Plaintiffs contend that participants are specifically authorized to sue plan fiduciaries by ERISA, 29 U.S.C. § 1132(a)(2), and, therefore, they need not allege direct injuries-in-fact. Plaintiffs cite *Sprint Commc'ns v. APCC Servs.*, 554 U.S. 269 (2008), for the proposition that "federal courts routinely entertain suits which will result in relief for parties that are not themselves directly bringing suit," *id.* at 287. Trustees counter that no federal appellate court has accepted representational standing as a sufficient basis under Article III for bringing a suit concerning a defined-benefit plan. *See Alphin*, 704 F.3d at 335-36 (4th Cir. 2013) (rejecting the *Sprint* theory of representational standing where the legal rights of a pension plan had not been contractually assigned to plaintiffs); *Harley v. Minnesota Min. & Mfg.*, 284 F.3d 901, 906 (8th Cir. 2002) (rejecting Article III standing because participants in defined-benefit plan had not suffered a direct injury). This result flows from the principle that "a participant in a defined benefit pension plan has an interest in his fixed future payments only, not

the assets of the pension fund." *Alphin*, 704 F.3d at 338; *see also Harley*, 284 F.3d at 906. While Plaintiffs acknowledge this case law, they argue that these decisions wrongly interpreted and applied *Sprint*.

*Sprint* was a suit brought by assignees of payphone operators, formally contracted to collect unpaid fees from long distance carriers to whom the payphone operators had connected users dialing a 1-800 number or its like. 554 U.S. at 271. The long distance carriers argued that the assignees lacked Article III standing because they would receive only a fee for aggregating claims and suing on them, and not the repayment sought from the carriers, which would go to the payphone operators. Written by Justice Breyer for the majority, *Sprint* noted that "history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider," *id.* at 274; found that "history and precedent are clear on the question . . .: [a]ssignees of a claim, including assignees for collection, have long been permitted to bring suit," *id.* at 275; and could find no "reasons for change" from such a "clear historical answer," *id.* Under those circumstances, the Court held that the assignees had standing to sue the long distance carriers. *Id.* The fact that the assignees would "simply remit the litigation proceeds to the payphone operators" did not render their claims unlikely to be redressed because "[t]hat inquiry focuses, as it should, on whether the *injury* that a plaintiff alleges is likely to be redressed through the litigation—not on what the plaintiff ultimately intends to do with the money he recovers." *Id.* at 286-87.

The *Sprint* language cited by Plaintiffs is taken out of this context. Chief Justice Roberts wrote in dissent that the Court had "never approved federal-court jurisdiction over a claim where the entire relief requested will run to a party not before the court." *Id.* at 302 (Roberts, C.J., dissenting). Justice Breyer replied:

9

> [F]ederal courts routinely entertain suits which will result in relief for parties that are not themselves directly bringing suit. Trustees bring suits to benefit their trusts; guardians ad litem bring suits to benefit their wards; receivers bring suit to benefit their receiverships; assignees in bankruptcy bring suit to benefit bankrupt estates; executors bring suit to benefit testator estates; and so forth.

*Id.* at 287-88. Further, "to the extent that trustees . . . and the like have some sort of 'obligation' to the parties whose interests they vindicate through litigation, . . . the same is true . . . here. The [assignees] have a *contractual* obligation to litigate 'in the payphone operator's interest.'" *Id.* at 288. The dissent by the Chief Justice and Justices Scalia, Thomas, and Alito makes the point clearly: "[Assignees] have nothing to gain from their lawsuit. Under settled principles of standing, that fact requires dismissal of their complaint." *Id.* at 298 (Roberts, C.J., dissenting).

The Court is not persuaded that *Sprint* represents a broadening of the traditional factors that govern Article III standing in this case. The difference of opinion on this point between the *Sprint* majority and dissent lies in their perspectives on whether an assignee has anything to gain from a suit in which the full recovery goes to the assignor and the assignee receives a fee. The question posed by the pending motion to dismiss is whether Plaintiffs have anything to gain from this lawsuit, where their relationship to the Central Pension Fund is entirely different. The Court is persuaded by the logic and reasoning of *Alphin* and *Harley*: a participant in a defined benefit plan can sue trustees for their failure to collect contributions when the participant faces a risk of non-payment of his pension—such as when trustees' dereliction threatens the financial stability of a plan—or when the participant specifically retains a reversionary interest in excess contributions if monies remain after all benefits are paid. *See Alphin*, 704 F.3d at 338 (no standing where ERISA plan "expressly provides that any surplus reverts only to the [p]lan and is not distributed to participants"); *Harley*, 284 F.3d at 908 n.5

10

("Both the Secretary of Labor and any party with a reversionary interest in [a] plan's surplus have standing to sue under 29 U.S.C. § 1132(a)(2)."). Participants in defined benefit plans neither have "a claim to any particular asset that composes a part of the plan's general asset pool," *Hughes Aircraft*, 525 U.S. at 440, nor "entitlement to share in a plan's surplus—even if it is partially attributable to the investment growth of their contributions," *id.,* at 440-41. Accordingly, unless a trustee's "[m]isconduct . . . creates or enhances the risk of default by the entire plan," *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 255 (2008), a participant in a defined benefit plan lacks Article III standing to sue. *See also New Orleans ILA Pensioners Ass'n v. Bd. of Trs. of New Orleans Empr's Int'l Longshoremen's Ass'n AFL-CIO Pension Fund*, Civil No. 07-6349, 2008 WL 215654, at *3 (E.D. La. Jan. 24, 2008) ("[P]articipants do not have standing to sue on behalf of [their] [p]lan for losses caused by fiduciary breach, unless the participants can establish that the remaining pool of assets will be inadequate to pay for the plan's outstanding liabilities.").

Without a factual allegation that Trustees' failure to collect contributions from ABM and Able deprived the Central Pension Fund of funds so that the Fund's risk of default has materially increased, Plaintiffs lack Article III standing. Plaintiffs try to make up for this deficiency by alleging that the Benefit Accrual Rate, and, thus, their pensions, would have increased if Trustees had acted properly and timely pursued the missing contributions. However, the best they can muster is that a history of periodic adjustments to the Benefit Accrual Rate[3] makes it "*likely* that [Trustees] will [adjust the Benefit Accrual Rate] again when there is a triggering change in financial health of the Plan." Opp'n [Dkt. 14] at 9 (emphasis added). Plaintiffs essentially concede that a change in the Benefit Accrual Rate is a matter of Trustee

---

[3] *See* Trustees' Mot. to Dismiss, Ex. 2 (Plan of Benefits) [Dkt. 7-3] § 6.01 (showing eleven adjustments since 1981).

11

discretion and is neither automatic nor guaranteed even if the Central Pension Fund receives additional funding. Establishing that a judicial decision is likely to redress a claimed injury becomes "substantially more difficult" where the plaintiff, as here, cannot realize remediation of his injury without discretionary intervention by an independent actor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992). Trustee discretion in setting the Benefit Accrual Rate makes Plaintiffs' claims too speculative to support Article III standing. *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608-09 (6th Cir. 2007) (no standing to bring ERISA lawsuit alleging that healthcare plan administrator negotiated hospital reimbursement rates more favorable to participants in its health maintenance organization than to participants in its self-insured plan because assumption that administrator would have passed on "any increase in reimbursements or administrative fees that may have resulted from [the] . . . alleged wrongful negotiations" to participants in self-insured plan is too speculative of an "injury"); *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) ("There is no redressability, and thus no standing, where . . . any prospective benefits depend on an independent actor who retains 'broad and legitimate discretion the courts cannot presume either to control or to predict.'" (quoting *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (opinion of Kennedy, J.)); *Cent. States*, 433 F.3d at 200 (noting that the Eighth Circuit has "held that an ERISA Plan participant or beneficiary must plead a direct injury in order to assert claims on behalf of a Plan"); *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 452-53, 456-57 (3d Cir. 2003) (no standing where ERISA cause of action premised on theory that healthcare plan administrator's use of physician incentives caused plaintiff's employer to overpay for the healthcare she received because lawsuit ""rest[ed] not only on the troublesome assumption that a factfinder can accurately determine the amount her firm allegedly overpaid [the plan

12

administrator], *but also on the notion that the firm would have passed these savings on to its employees in the form of a higher salary or additional benefits*." (emphasis added)).

Plaintiffs argue against this conclusion because it would strip them of their rights, under ERISA, to sue Trustees for violations of their fiduciary duties to the Central Pension Fund. ERISA sections 409 and 502(a) provide that plan participants can sue trustees for breach of fiduciary duties. 29 U.S.C. § 1109 ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable . . . , and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . ."); 29 U.S.C. § 1132(a) ("A civil action may be brought . . . by the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under section 1109 of this title . . . ."). However "statutory standing will not suffice to substitute for Article III standing." *Cent. States*, 433 F.3d at 201. Thus, Plaintiffs have a statutory right that is cancelled by their failure to meet the "irreducible constitutional minimum" required for bringing suit in federal court. *Lujan*, 504 U.S. at 560. Nonetheless, a trustee's breach of his fiduciary duties to a defined benefit plan is susceptible to correction: "[b]oth the Secretary of Labor and any party with a reversionary interest in [a] plan's surplus have standing to sue under 29 U.S.C. § 1132(a)(2)." *Harley*, 284 F.3d at 908 n.5.

The Court notes that, in some circumstances, "a plan participant may have Article III standing to obtain injunctive relief related to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm to the participant." *Cent. States*, 433 F.3d at 199; *see also Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*, 332 F.3d 1198, 1203 (9th Cir. 2003) (reversing district court's dismissal for failure to state a claim, finding that actual injury to individual participants is unnecessary where relief sought is "purely equitable");

13

*Horvath*, 333 F.3d at 456 ("[W]ith regard to injunctive relief, it is well-established that the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." (internal quotations and citations omitted)). However, cases that allow such suits arise from limited kinds of injuries, mostly dealing with a plan's failure to comply with ERISA's disclosure requirements or non-monetary breaches of fiduciary duty. *See Harvath*, 333 F.3d at 455 (finding standing as to plaintiff who sought injunction barring defendant from omitting information in its disclosures to plan participants); *J.T. v. Regence BlueShield*, 291 F.R.D. 601, 610 (W.D. Wash. 2013) ("To the extent that [plaintiff] seeks only to enjoin [d]efendants from disseminating allegedly erroneous information, she seeks an equitable, non-monetary relief that does not require a showing of an individual loss or injury. As a plan beneficiary, she thus has standing to pursue this remedy."); *New Orleans ILA Pensioners*, 2008 WL 215654, at *4 (distinguishing between monetary and non-monetary remedies for purposes of Article III standing); *Banyai v. Mazur*, Civ. No. 00-9806, 2007 WL 959066, at *4 (S.D.N.Y. Mar. 29, 2007) (same); *Wells v. Cal. Physicians' Serv.*, Civil No. C 05-01229, 2007 WL 926490, at *5 (N.D. Cal. Mar. 26, 2007) (same).

The equitable relief that Plaintiffs seek here is a "declaration that the Trustees of the [Central Pension Fund] have breached their ERISA fiduciary duties to the [Fund] and its plan participants by failing to pursue delinquent contributions to the [Fund]." Compl. at 14, ¶ (a). As in *New Orleans ILA Pensioners*, the requested injunctive relief is related directly to the alleged monetary loss to the Central Pension Fun and does not "exist[] wholly apart from monetary claims." 2008 WL 215654, at *4. Such equitable relief is plainly intertwined with Plaintiffs' demands for monetary relief. *See* Compl. at 14, ¶¶ (c) ("make good to the [Central Pension Fund] all losses") & (d) (pre- and post-judgment interest). In this case, no declaration could

issue without a prior determination that uncollected money was owed to the Central Pension Fund. The Court concludes that Plaintiffs must have Article III standing to pursue any part of Count I, which they do not have. Consequently, they lack standing to bring a suit for the equitable relief sought against Trustees.

Because the Court finds that Plaintiffs do not have standing to bring Count I as drafted, it will not address Trustees' other arguments for dismissal and will dismiss Count I without prejudice, giving Plaintiffs a reasonable time to decide whether the facts would support an amended complaint consistent with this opinion.[4]

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Trustees' Motion in part and dismiss Count I without prejudice. Plaintiffs have withdrawn Counts II and III voluntarily, and they also will be dismissed without prejudice. As a result, the Trustees' Motion to dismiss as it concerns Count II, and the motions to dismiss filed by ABM and Able will be denied as moot. ABM's request for fees and costs will be denied. A memorializing Order accompanies this Opinion.

Date: December 9, 2013

/s/
ROSEMARY M. COLLYER
United States District Court

---

[4] Plaintiffs moved to dismiss Counts II and III prior to any Defendant filing an answer or motion for summary judgment. As a result, Federal Rule of Civil Procedure 41(a)(1) permits Plaintiffs to dismiss their Complaint partially without first obtaining court approval or Defendants' agreement. Rule 41(a)(1)(B) specifies that such dismissal will be without prejudice. ABM requests attorney fees and costs but cites only *Taragan v. Eli Lilly & Co.,* 838 F.2d 1337 (D.C. Cir. 1988), which concerned Rule 41(a)(2). The motion for fees and costs will be denied. The Court rejects ABM's insinuations that Plaintiffs failed to investigate their claims adequately before filing suit: the Central Pension Fund and the law governing it are both complex and opaque and Plaintiffs have responded promptly and appropriately to Defendants' arguments.

15